John H. Gray (#028107)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
JHGray@perkinscoie.com
DocketPHX@perkinscoie.com

William C. Rava (WSBA #29948)
(*pro hac vice* forthcoming)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
WRava@perkinscoie.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In-N-Out Burgers, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>Fariborz Abbasi and Jane Doe Abbasi d/b/a In - N - Out Cafe, In. N. Out Cafe AZ, In-N-Out Restaurant & Bar, In.N.Out . Bar . Restaurants, In N Out Coffee and Chai AZ, and In N Out Pizza/Wings/Gyro AZ; John Doe; Jane Doe; ABC Corporations 1-30;<br><br>Defendants. | No. _____<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff In-N-Out Burgers ("In-N-Out" or "Plaintiff") alleges as follows for its Complaint against Fariborz Abbasi ("Abbasi"), which upon information and belief is doing business as "In - N - Out Café," "In. N. Out. Café AZ," "In-N-Out Restaurant & Bar," "In.N.Out . Bar . Restaurants," "In N Out Coffee and Chai AZ," and "In N Out Pizza/Wings/Gyro AZ," fictional defendants, John Doe, Jane Doe, and ABC Corporations 1-30 (collectively, "Defendants"):

**PARTIES**

1.     Plaintiff In-N-Out is a California corporation with its principal place of business in Irvine, California.

2.     Defendant Abbasi is a natural person, who has associated himself with addresses in Maricopa County, Arizona, and, upon information and belief, is a resident of Maricopa County, Arizona.

3.     Upon information and belief, Abbasi does business as the following business names: "In - N - Out Café," "In. N. Out. Café AZ," "In-N-Out Restaurant & Bar," "In.N.Out . Bar . Restaurants," "In N Out Coffee and Chai AZ," and "In N Out Pizza/Wings/Gyro AZ."

4.     Specifically, upon information and belief, Abbasi does business as "In-N-Out Restaurant & Bar," which is a food service establishment owned and operated by Abbasi and located in or around the Westgate District in Glendale, AZ, at or near the address, 6922 N. 95th Avenue, Suite 300, Glendale, AZ 85305.

5.     Upon information and belief, Abbasi does business as "In - N - Out Café." According to the Arizona Secretary of State website, Abbasi has registered the trade name, "In - N - Out Café," which has an address of 6922 N. 95th Avenue, Suite 300, Glendale, AZ 85305. A copy of the Arizona Secretary of State registered name for "In - N - Out Café" is attached as Exhibit 1 to the Complaint.

6.     Upon information and belief, Abbasi does business as "In. N. Out Café AZ." According to the Arizona Secretary of State website, Abbasi has registered the trade name, "In. N. Out. Café AZ," which has an address of 6922 N. 95th Avenue, Suite 300, Glendale, AZ 85305. A copy of the Arizona Secretary of State registered name for "In. N. Out. Café AZ" is attached as Exhibit 2 to the Complaint.

7.     The official address on the Arizona Secretary of State website for "In - N - Out Café" and "In. N. Out. Café AZ" is the same address for "In-N-Out Restaurant & Bar," which Abbasi owns.

8.      Upon information and belief, Abbasi does business as "In.N.Out . Bar . Restaurants." According to the Arizona Secretary of State website, Abbasi has registered the trade name, "In.N.Out . Bar . Restaurants," which has an address of 8563 W. Mission Lane, Peoria, AZ 85345. A copy of the Arizona Secretary of State registered name for "In.N.Out . Bar . Restaurants" is attached as Exhibit 3 to the Complaint.

9.      Upon information and belief, Abbasi does business as "In N Out Coffee and Chai AZ." According to the Arizona Secretary of State website, "In N Out Coffee and Chai AZ" has an address of 8563 W. Mission Lane, Peoria, AZ 85345, which is the same registered address as "In.N.Out . Bar . Restaurants." A copy of the Arizona Secretary of State registered name for "In N Out Coffee and Chai AZ" is attached as Exhibit 4 to the Complaint.

10.     Upon information and belief, Abbasi does business as "In N Out Pizza/Wings/Gyro AZ." Abbasi has stated that he is the "owner" of a business called "In N Out Pizza." And according to the Arizona Secretary of State website, "In N Out Pizza/Wings/Gyro AZ" has an address of 8563 W. Mission Lane, Peoria, AZ 85345, which is the same registered address as "In.N.Out . Bar . Restaurants." A copy of the Arizona Secretary of State registered name for "In N Out Pizza/Wings/Gyro AZ" is attached as Exhibit 5 to the Complaint.

11.     Jane Doe Abbasi is a defendant denoting a spouse of Defendant Fariborz Abbasi, and upon information and belief is a resident of Maricopa County, Arizona. Upon information and belief, all actions taken by Abbasi were on behalf of and for the benefit of the marital community, and thus the community property assets, if any, are subject to any judgment entered in this matter. John Doe, Jane Doe, and ABC Corporations 1-30 are fictional defendants, who may be directing, or participating in, the alleged wrongdoing.  The identifies of any fictional defendants may be added upon further investigation or discovery.

**JURISDICTION AND VENUE**

12.    This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367. This case primarily involves a federal question; complete diversity of citizenship exists; and the amount in controversy exceeds $75,000.

13.    This Court has personal jurisdiction over Defendants because they are residents of Arizona, transact and do business in this judicial district, and engaged in the wrongful conduct alleged in the Complaint in this district.

14.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because Defendants reside in this judicial district and conduct business and commit infringing acts in this district. Defendants also advertise and offer goods or services bearing infringing trademarks in this district.

**PLAINTIFF'S BUSINESS**

15.    "In-N-Out Burger" is a nationally-recognized restaurant chain owned by In-N-Out that operates over 300 restaurants in the United States. Founded in 1948, Plaintiff operates a successful and popular chain of quick service restaurants, offering dine-in and take-out services. Plaintiff has continuously used federally registered trademarks and service marks including the words "In-N-Out" and "In-N-Out Burger" since at least 1960. Plaintiff has used those marks in interstate commerce in connection with its advertising, promotion, offering to provide, and providing specially-prepared sandwiches and other goods and services to consumers.

16.    In-N-Out Burger has operated in Arizona since 2000 and has 30 restaurants in Arizona alone. Additionally, In-N-Out Burger had been well-known to Arizona residents for many years prior to 2000 due to their extensive travel and relocation between Arizona and California and Nevada, where In-N-Out Burger had locations for many previous years.

17.    This includes multiple In-N-Out Burger restaurants within close proximity to 6922 N. 95th Avenue, Suite 300, Glendale, AZ 85305, the site of Defendants' "In-N-Out Restaurant & Bar."

18.     In-N-Out Burger restaurants sell a wide range of food and other products, including, for example, hamburgers, cheeseburgers, French fries, coffee, lemonade, milkshakes, bumper stickers, backpacks, coffee mugs, and shirts.

19.     Through its restaurants and online store, In-N-Out has sold and continues to sell goods throughout the United States, including in Arizona.

20.     In-N-Out owns all right, title, and interest in the mark "In-N-Out" and has obtained federal trademark and service mark registrations for the mark "In-N-Out" and "In-N-Out Burger" for its wide range of food and other products.

21.     In-N-Out owns multiple incontestable registrations, under which it owns the exclusive right to use the "In-N-Out" marks nationwide. These registrations include, for example, the following United States Patent and Trademark Office registration numbers, which are attached as Exhibits 6-12 of the Complaint:

- Reg. No. 1085163 (restaurant services and carry-out restaurant services);
- Reg. No. 1101628 (milk and French fried potatoes for consumption on or off the premises; lemonade and soft drinks for consumption on or off the premises);
- Reg. No. 1101638 (cheeseburgers, hamburgers, hot coffee and milkshakes for consumption on or off premises);
- Reg. No. 1522799 (restaurant services and carry-out restaurant services; hamburger sandwiches and cheeseburger sandwiches, hot coffee, and milkshakes for consumption on or off the premises; milk and French fried potatoes for consumption on or off the premises; lemonade and soft drinks for consumption on or off the premises);
- Reg. No. 1525982 (restaurant services and carry-out restaurant services; hamburger sandwiches and cheeseburger sandwiches, hot coffee, and milkshakes for consumption on or off the premises; milk and French fried potatoes for consumption on or off the premises; lemonade and soft drinks for consumption on or off the premises);

- Reg. No. 2217307 (watches; decals in the nature of bumper stickers; publications in the nature of house organs; gift certificates; backpacks; coffee mugs and thermal mugs; shirts, baseball caps, letterman's jackets, and cooks aprons);

- Reg. No. 2285823 (computer services, namely, providing data bases in the field of restaurant services and in the field of retail and mail order merchandising services)

22.     In-N-Out has used its marks in interstate commerce to identify and distinguish In-N-Out's products and services for decades.  This includes displaying the marks at restaurants, and on product packaging, menus, signage, mobile food trucks, promotional materials, and advertising materials.

23.     In-N-Out's marks are symbols of the origin, quality, reputation, and goodwill of In-N-Out products and services.

24.     In-N-Out has invested millions of dollars in advertising featuring its marks in an effort to create a strong association between In-N-Out's marks and its products, services, and business goodwill.

25.     In-N-Out has offered, and continues to offer, its products and services under its marks, and the marks have continuously appeared at In-N-Out Burger locations and been featured in substantial advertising and promotional activities.

26.     In-N-Out's marks have received widespread public recognition throughout the United States, including in Arizona.  For instance, In-N-Out's marks have been promoted and featured in many significant national publications, television shows, and consumer and industry reports.

27.     As a result of the care and skill exercised by In-N-Out in its business, the quality of its products and services offered under the marks, and its extensive advertising, sale, and promotion of products and services under the marks, the marks have acquired secondary meaning throughout the United States, including in Arizona.  The marks are

also widely recognized by the general consuming public, including in Arizona, as a designation that In-N-Out is the source of the goods and services bearing the marks.

28.     The marks are strong, arbitrary and distinctive marks that warrant broad protection in both related and unrelated product and/or service classes.

29.     In-N-Out's marks' warranted protection extends to restaurants, bars, and other establishments that offer food and/or beverages for sale.

30.     Since the date of first use of the marks, In-N-Out has manifested the intent to maintain exclusive ownership of the marks and to continue use of the marks in interstate commerce in connection with In-N-Out's products and services.

31.     In-N-Out has carefully monitored and policed the use of the marks and maintains control over the use of the marks so that it is engaging in substantially exclusive use of the marks, particularly in the restaurant and food and beverage industries.

32.     In-N-Out maintains a website, www.in-n-out.com, which offers information about In-N-Out, its restaurants, goods, and services.

**DEFENDANTS' INFRINGING CONDUCT AND OTHER ILLEGAL ACTIVITIES**

33.     Defendants are using in commerce multiple infringing marks, all of which are in the restaurant or food and beverage industries, the same industry as In-N-Out.

34.     Defendants own and operate a restaurant called "In-N-Out Restaurant & Bar."

35.     "In-N-Out Restaurant & Bar" offers or intends to offer food, beverages, and related services to consumers.

36.     Upon information and belief, "In-N-Out Restaurant & Bar" operates or will operate at or near 6922 N. 95th Avenue, Suite 300, Glendale, AZ 85305.

37.     A Facebook page for "In-N-Out Restaurant & Bar" states on the business's logo that it is a "Restaurant/Cafe" and is located in the Westgate District of Glendale, AZ 85305, which is near 6922 N. 95th Avenue, Suite 300, Glendale, AZ 85305.  A copy of the Facebook page is attached as Exhibit 13 to the Complaint.

1       38.     At or near a building at 6922 N. 95th Avenue, Suite 300, Glendale, AZ

2  85305, two identical large signs say, "In-N-Out Restaurant & Bar ~ Coming Soon! Now

3  Hiring All Positions! Apply @ In-N-OutGrill.com." One sign is visible from a street, and

4  the other is visible from a shopping center. Photographs of one sign are attached as

5  Exhibit 14 to the Complaint. There is also construction underway in the building for In-N-

6  Out Restaurant & Bar.

7       39.     Because signage advertises the website in-n-outgrill.com, and because that

8  website refers to a "In-N-Out Restaurant & Bar," upon information and belief, the

9  www.in-n-outgrill.com website is related to the same In-N-Out Restaurant & Bar located

10  in Glendale, Arizona.  A website printout of www.in-n-outgrill.com is attached as Exhibit

11  15 to the Complaint.

12       40.     The www.in-n-outgrill.com website and the "In-N-Out Restaurant & Bar"

13  Facebook page are available on the internet to consumers in Arizona and across the

14  United States.

15       41.     The "In-N-Out Restaurant & Bar" and any related businesses are open to

16  consumers who may be traveling from, or may reside in, states other than Arizona.

17       42.     Neither Abbasi, nor any businesses operating as "In-N-Out Restaurant &

18  Bar," "In - N - Out Café," "In. N. Out. Café AZ," "In.N.Out . Bar . Restaurants," "In N

19  Out Coffee and Chai AZ," or "In N Out Pizza/Wings/Gyro AZ," nor the website www.in-

20  n-outgrill.com or the Facebook page for "In-N-Out Restaurant & Bar" (collectively, the

21  "infringing marks"), are actually affiliated with In-N-Out.

22       43.     In-N-Out has not authorized Abbasi or anyone else to use the infringing

23  marks.

24       44.     Abbasi has advertised and promoted his businesses by using the infringing

25  marks, at least through signage and websites.

26       45.     In-N-Out Restaurant & Bar and Abbasi's other businesses offer and/or

27  intend to offer food and beverage products and services.

28

46.     The infringing marks are colorable imitations of In-N-Out's marks. Defendants have used and are using In-N-Out's marks. At minimum, Defendants are using marks that are confusingly similar to In-N-Out's "In-N-Out" marks.

47.     Defendants' unauthorized use of In-N-Out's marks in marketing, advertising, and promotional materials creates a likelihood of consumer confusion because actual and prospective customers are likely to believe that In-N-Out has approved or licensed Defendants' use of its marks, that Plaintiff is somehow affiliated or connected with Defendants or their goods or services, or that Plaintiff stands behind or supports Defendants' goods or services. However, Plaintiff has not sponsored, licensed, authorized, or supported Defendants' goods or services.

48.     Defendants' use of Plaintiff's distinctive trademarks implies that Defendant provides In-N-Out products or In-N-Out-backed products to consumers, and that the quality and services that Defendants offer are commensurate with the quality that In-N-Out offers.

49.     In-N-Out has spent years building business goodwill by focusing on quality products and services, as negative customer experiences can negatively affect the In-N-Out brand. In-N-Out's marks thus far have been associated with quality products and ingredients. However, In-N-Out has no control over whether Defendants' products or services will meet the same rigorous quality standards that In-N-Out requires of its own products.

50.     In-N-Out has asked Abbasi to cease and desist from all uses of any infringing mark. In the communications, In-N-Out cited its marks and their use throughout the United States.  Abbasi nonetheless refused to stop using the infringing marks despite being aware of In-N-Out's marks.

## COUNT ONE

### (FEDERAL TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT)
### (15 U.S.C. § 1114)

51.     In-N-Out alleges and incorporates by reference the allegations in all previous paragraphs.

52.     Defendants' conduct constitutes infringement of In-N-Out's federally registered "In-N-Out" trademarks in violation of 15 U.S.C. § 1441(1).

53.     Because of In-N-Out's long, continuous, and exclusive use of the "In-N-Out" marks, they have come to mean, and are understood by consumers, to signify In-N-Out's products and services.

54.     Defendants' use of In-N-Out's marks and of marks confusingly similar to In-N-Out's marks in connection with the sale, offering for sale, distribution, and/or advertising of products and services, including food and beverage products and services, is likely to lead to confusion, mistake, or deception as to their source, origin, or authenticity.

55.     Defendants' conduct is likely to lead consumers to conclude, incorrectly, that Defendants' products and services originate with, or are authorized by, In-N-Out, to the damage of In-N-Out.

56.     Defendants knew or should have known of In-N-Out's rights, and their infringement has been knowing, willful and deliberate. The Court should award Plaintiff its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

57.     In-N-Out has been, and continues to be, damaged by Defendants' conduct in a manner that cannot be fully measured or compensated in economic terms. In-N-Out therefore has no adequate remedy at law and seeks, among other relief, injunctive relief pursuant to 15 U.S.C. § 1116.

58.     Defendants' conduct has damaged and threatens to damage In-N-Out's reputation and goodwill.

## COUNT TWO

### (FEDERAL FALSE DESCRIPTION AND DESIGNATION OF ORIGIN)
### (15 U.S.C. § 1125(A))

59.     In-N-Out alleges and incorporates by reference the allegations in all previous paragraphs.

60.     In-N-Out has acquired strong rights in the "In-N-Out" marks.

61.     Defendants' conduct constitutes the use in interstate commerce of a false designation of origin, false or misleading description of fact, or false or misleading representations of fact that are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Defendants' products and services with In-N-Out, as to the origin, sponsorship, or approval of the goods provided by Defendants, or as to the nature, characteristics, or qualities of Defendants' products and services offered in connection with the In-N-Out marks, in violation of 15 U.S.C. § 1125(a).

62.     Defendants' conduct is likely to cause confusion or mistake, or to deceive consumers into believing that In-N-Out's products are associated with or originate from Defendants, in violation of 15 U.S.C. § 1125(a).

63.     Defendants knew or should have known of In-N-Out's rights, and their infringement has been knowing, willful and deliberate.  The Court should award Plaintiff its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

64.     In-N-Out has been, and continues to be, damaged by Defendants' conduct in a manner that cannot be fully measured or compensated in economic terms.  In-N-Out therefore has no adequate remedy at law and seeks, among other relief, injunctive relief pursuant to 15 U.S.C. § 1116.

65.     Defendants' conduct has damaged and threatens to damage In-N-Out's reputation and goodwill.

**COUNT THREE**

**(ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT)**
**(15 U.S.C. § 1125(d))**

66.     In-N-Out alleges and incorporates by reference the allegations in all previous paragraphs.

67.     In-N-Out is the owner of the distinctive, registered "In-N-Out" marks.

68.     Defendants have registered, or were licensed by the domain name registrant, and have used the website, www.in-n-outgrill.com, and a Facebook page for the In-N-Out Restaurant & Bar, to advertise, market, and promote the In-N-Out Restaurant & Bar restaurant, which offers or will offer food and beverage products and services.

69.     Defendants have done so with a bad faith intent to profit from the "In-N-Out" marks.

70.     The www.in-n-outgrill.com website and the Facebook page titled "In-N-Out Restaurant & Bar" are identical, or at least confusingly similar to, In-N-Out's registered marks.

71.     Defendants have used infringing marks with the intent to divert consumers from In-N-Out's website and from In-N-Out's business generally.

72.     The infringing domain names should be forfeited, cancelled, or transferred to In-N-Out pursuant to 15 U.S.C. § 1125(d).

**COUNT FOUR**

**(COMMON LAW TRADEMARK INFRINGEMENT)**

73.     In-N-Out alleges and incorporates by reference the allegations in all previous paragraphs.

74.     Defendants' use of the "In-N-Out" mark and its variants are colorable imitations of In-N-Out's registered "In-N-Out" mark. Defendants' use of the mark in Arizona in connection with the sale, offering for sale, distribution, or advertising of

1   Defendants' goods or services has caused or is likely to cause confusion, or to cause
2   mistake, or to deceive.

3       75.    Arizona consumers viewing Defendants' marks are likely to purchase
4   Defendants' products and services under a mistaken belief that the services are, or are
5   associated with, Plaintiff's products and services.

6       76.    Upon information and belief, in selecting the "In-N-Out" mark and similar
7   variants, and by using it in commerce in Arizona, Defendants have acted willfully, in bad
8   faith, and with the intent to confuse and deceive Arizona consumers and the public; to
9   compete unfairly against In-N-Out in Arizona; to trade on In-N-Out's reputation and
10  goodwill in Arizona by causing consumer confusion and mistake; and to confuse or
11  deceive the public in Arizona into believing that Defendants' products or services are
12  associated with, sponsored by, or approved by In-N-Out, when in fact they are not.

13      77.    Defendants' conduct has damaged or will damage In-N-Out's business,
14  reputation, and goodwill in Arizona, and have interfered or will interfere with In-N-Out's
15  use of its marks in Arizona.

16      78.    In-N-Out has been, and continues to be, damaged by Defendants' conduct in
17  a manner that cannot be fully measured or compensated in economic terms. In-N-Out
18  therefore has no adequate remedy at law and seeks, among other relief, injunctive relief.

19
20                              COUNT FIVE
21                     (ARIZONA UNFAIR COMPETITION)

22      79.    In-N-Out alleges and incorporates by reference the allegations in all
23  previous paragraphs.

24      80.    By virtue of the acts outlined herein, including using the "In-N-Out" mark
25  and similar variants to advertise, market, and promote Defendants' products and services,
26  and creating confusion as to the origin or quality of Defendants' products, Defendants
27  have intentionally caused a likelihood of confusion among the public in Arizona, in a

28

manner that is contrary to honest practice in commercial matters and that violates the common law of the State of Arizona.

81.     Defendants, through their conduct alleged above, also have engaged in unfair competition with In-N-Out, at least in the restaurant and food and beverage industry, in Arizona that is contrary to honest practice in commercial matters and that violates the common law of the State of Arizona.

82.     Defendants' actions in Arizona have damaged or will damage In-N-Out's business, reputation and goodwill.

83.     In-N-Out has been, and continues to be, damaged by Defendants' conduct in a manner that cannot be fully measured or compensated in economic terms. In-N-Out therefore has no adequate remedy at law and seeks, among other relief, injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, In-N-Out prays for the following relief:

1.     An order enjoining Defendants, their agents, servers, officers, employees, and all persons in active concert or participation with them (a) from using in any matter whatsoever In-N-Out's marks, or any confusingly similar mark, logo, trade name, domain name or other source identifier, in connection with any restaurants, or any products or services related to any food or beverage service, whether on any signage, document, internet webpage, social media site, or any other manner; (b) from violating, inducing, or enabling others to violate, In-N-Out's trademark rights in any manner; (c) from registering or seeking to register any trademarks, service marks, trade names, domain names, or any other source identifiers of any kind that incorporate the In-N-Out's marks or any confusingly similar term; and (d) from unfairly competing with In-N-Out in any manner.

2.     An injunction ordering Defendants to submit a voluntary request for cancellation (pursuant to A.R.S. § 44-1448(1)) of all Arizona trade names including the In-N-Out marks, the phrase "in-n-out," or any other confusingly similar language, and prohibiting Defendants from applying for or using future trade names including the In-N-Out marks, the phrase "in-n-out," or any other confusingly similar language.

3.      An injunction ordering the cancellation or forfeiture of the www.in-n-outgrill.com domain name, as well as transfer of that domain name and any other infringing domain name to In-N-Out.

4.      Judgment in In-N-Out's favor against Defendants on all federal and state law claims alleged herein.

5.      Damages, including actual damages, statutory damages, and/or treble damages, paid by Defendants to In-N-Out in an amount to be proven at trial.

6.      Pre-judgment and post-judgment interest.

7.      In-N-Out's reasonable attorneys' fees, costs, and expenses.

8.      Any other relief as the Court deems just and proper.

**JURY DEMAND**

In-N-Out demands a jury trial of all issues so triable.


December 6, 2016.                              **PERKINS COIE LLP**


By:   *s/ John H. Gray*
     John H. Gray (#028107)
     PERKINS COIE LLP
     2901 North Central Avenue, Suite 2000
     Phoenix, Arizona  85012-2788
     Telephone:  602.351.8000
     Facsimile:  602.648.7000
     JHGray@perkinscoie.com

     William C. Rava (WSBA #29948)
     (*pro hac vice* forthcoming)
     WRava@perkinscoie.com
     PERKINS COIE LLP
     1201 Third Avenue, Suite 4900
     Seattle, Washington  98101-3099
     Telephone:  206.359.8000
     Facsimile:  206-359-9000
     WRava@perkinscoie.com

     Attorneys for Plaintiff

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on December 6, 2016, I electronically transmitted the attached

3  document to the Clerk's Office using the CM/ECF System for filing and a Notice of

4  Electronic Filing was transmitted to counsel of record.

5

6                                        s/ Stephanie Lawson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28